IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WOODS SERVICES, INC. | CIVIL ACTION |
|---|---|
| v. | NO. 18-296 |
| DISABILITY ADVOCATES, INC., *d/b/a* *Disability Rights New York* | |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.** May 8, 2018

## I. Introduction

At issue in this diversity case is whether this Court should grant Defendant's motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons described below, the motion is DENIED.

## II. Relevant Factual[1] and Procedural History

Plaintiff Woods Services, Inc. ("Woods") alleges that Defendant Disability Advocates, Inc. d/b/a Disability Rights New York (DRNY") issued a public report (the "DRNY Report") regarding purported abuse and neglect of New York residents in the care of Woods, a provider of residential, educational, and clinical services to children and adults with developmental disabilities. (ECF 1, Compl. ¶ 1). The DRNY Report purports to make 34 recommendations for corrective actions at Woods, but Woods alleges that DRNY knows or should have known that the vast majority of the recommended policies and procedures are already in place at Woods,

---

[1] In considering motions to dismiss under Rules 12(b)(2) and Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen.

1

while others are impossible, would be contrary to regulatory requirements, or would degrade resident safety. (Id. ¶ 2). Woods was not permitted to review and respond to the DRNY Report. (Id. ¶ 3). Instead, DRNY publicly released the Report and broadly disseminated it through social media and its website, thereby increasing the harm to Woods. (Id.). Woods also alleges that DRNY encouraged subsequent media coverage. (Id.). As a result, Woods received numerous investigative visits from oversight agencies, suspensions of new resident referrals, and inquiries from family members and the public regarding its practices. (Id.). Woods has also had to conduct its own internal investigations. (Id.). The investigations and inquiries have generally found no basis for DRNY's allegations of abuse and neglect, but have required significant investments in time and energy. (Id.).

Woods filed its Complaint in this Court on January 24, 2018. The Complaint alleges four counts:

  Count I: Defamation
  Count II: Commercial Disparagement
  Count III: Intentional Interference With Contractual Relationships
  Count IV: Intentional Interference With Prospective Contractual Relationships

The Complaint alleges that this Court has personal jurisdiction over DRNY based on DRNY's systematic and continuous contacts with Pennsylvania, including by way of its past and ongoing investigations of Woods, legal representations of Woods residents, and publishing of the DRNY Report to Pennsylvania residents, including via *The Philadelphia Inquirer*.

Plaintiff's principal place of business is in Langhorne, Pennsylvania, while Defendant's is in Albany, New York, and the amount in controversy exceeds $75,000. (Id. ¶¶ 4-6).

Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted); see Toys R US v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

On February 15, 2018, Defendant filed the Motion to Dismiss that this Court presently considers (ECF 8), to which Woods filed a response on March 1, 2018 (ECF 9). Defendant then filed its reply on March 8, 2018 (ECF 10), and Plaintiff was granted leave to file a sur-reply brief on March 19, 2018. (ECF 12, Order granting leave to file sur-reply; ECF 13, Sur-reply brief).[2] Following a recorded telephone call with the parties, Defendant's counsel filed a letter informing the Court that Defendant "does not require any jurisdictional discovery." (ECF 22). As part of that letter submission, Defendant filed a supplemental declaration. (Id.)

The parties' submissions only relate to two questions: (1) whether this Court has personal jurisdiction over the case; and (2) whether Count I (Defamation) fails to state a claim for which relief can be granted by this Court.

## III. Legal Standard

### A. Rule 12(b)(2) Motions

In considering a motion to dismiss under Rule 12(b)(2), "a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Toys R Us v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). Once a jurisdictional defense has been raised, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n. 9 (3d Cir. 1984). When the district court does not hold an evidentiary hearing, the plaintiff must establish only a prima facie case of personal jurisdiction. Eurofins Pharma U.S. Holdings v.

---

[2] On February 13, 2018, DRNY filed a Motion to Stay Discovery Pending Ruling on Dispositive Motion (ECF 16), which is moot in light of this Memorandum.

BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010) (citing Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009)).

A federal district court may assert personal jurisdiction over a non-resident to the extent of the law of the state in which it sits according to Federal Rule of Civil Procedure 4(e). Time Share Vacation Club, 735 F.2d at 63. The long-arm statute for Pennsylvania provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). The Due Process Clause of the Fourteenth Amendment requires non-resident defendants to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (alteration in original). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987)).

There are two types of personal jurisdiction a court may have over a defendant: general jurisdiction and personal jurisdiction. General jurisdiction requires a defendant to have maintained systematic and continuous contacts with the forum state, and specific jurisdiction requires the claim to arise out of conduct purposely directed at the forum state. Remick, 238 F.3d at 296. (citing Helicopteros Nacionalesa de Colombia, 466 U.S. 408, 414-15 (1984)). When neither party argues that general jurisdiction exists over the defendant in the forum state, the

4

court may examine specific jurisdiction on its own. Remick, 238 F.3d at 296. (citing Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200-01 (3d Cir. 1998)).

There are three steps to determining specific jurisdiction:

> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice.

Marten, 499 F.3d at 296 (3d Cir. 2007) (internal quotations and citations omitted) (alteration original). Once a court is satisfied that a defendant has established minimum contacts satisfying the first two parts of this test, it will deny jurisdiction only if the defendant "make[s] a 'compelling case' that litigation in Pennsylvania would be unreasonable and unfair." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 323 (3d Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

### B. Rule 12(b)(6) Motions

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## IV. Analysis

### A. Personal Jurisdiction

This Court has personal jurisdiction over DRNY based on its contacts with Pennsylvania. Personal jurisdiction analysis requires that a defendant have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." Burger King Corp. v.

5

Rudzewicz, 471 U.S. 462, 472 (1985) (internal quotation omitted). That requirement is satisfied if "the defendant has purposefully directed his activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities." Id. (internal quotations omitted). Here, DRNY has voluntarily travelled to Pennsylvania on multiple occasions,[3] monitored and investigated Woods' facility there, interviewed Woods' employees and residents in Pennsylvania,[4] and written a report about its investigation that allegedly caused harm to Woods in Pennsylvania.

Minimum contacts analysis also requires that "the litigation must 'arise out of or relate to'" at least one of DRNY's contacts with Pennsylvania. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). The DRNY Report, which Plaintiff alleges is the source of the improper statements, connects Defendant's investigative activities in Pennsylvania to the content of the Report itself. For example, the Executive Summary of the Report discusses DRNY's visits to Woods, its in-person interviews with Woods residents, and its meetings with Woods staff and administrators. (Compl. Ex. A, Report at 4). Because the defamatory statements in the Report arise directly from DRNY's contacts with Pennsylvania, the relatedness requirement is plainly met here.

Defendant, however, asserts that the Calder Effects Test should apply here. See Calder v. Jones, 465 U.S. 783 (1984). This is not correct. Where an alleged tortfeasor has "sufficient

---

[3] The Report itself asserts that DRNY visited the Woods facility in Pennsylvania on two occasions, in October and December 2016. (Compl. Ex. A, Report at 4). In addition, DRNY representatives visited Woods on at least three other occasions: in August 2016, June 2017, and January 2018. (Haggerty Decl. ¶ 4).

[4] The January 2018 visit lasted for three days and involved at least five DRNY staff. (See id. ¶ 5 and Ex. A (attaching sign in sheet from January 2018 visit)). During that visit, DRNY met with 30 Woods

contacts with [the forum state] under the more traditional personal jurisdiction analysis, [courts] need not reach the question of whether the [movant] would also be subject to jurisdiction under the effects test." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 n. 2 (3d Cir. 2004).[5]

Accepting the allegations of the Complaint as true, which we must at this stage of the litigation, personal jurisdiction is plainly satisfied.[6]

### B. Motion to Dismiss Count I (Defamation) For Failure to State a Claim

Defendant makes the following arguments in support of its contention that the Complaint fails to state a claim for defamation:

(1) Defendant's statements in the DRNY report are shielded by qualified privilege under New York common law;

(2) The Complaint fails to overcome its burden of overcoming the qualified privilege;

(3) The DRNY Report is protected by the First Amendment; and

(4) The Complaint fails to show actual malice, which it must because Plaintiff is a limited-purpose public figure.

In response, Plaintiff contends that:

(1) Pennsylvania law applies;

(2) Under Pennsylvania law, Defendant's assertion of privilege does not heighten the negligence standard, which the Complaint satisfies;

(3) Whether Plaintiff is a public figure is a question of fact inappropriate for resolution at the motion to dismiss stage; and

(4) The Complaint satisfies Plaintiff's obligations to plead actual malice.

---

residents. (Id. ¶ 5). Other visits likewise included multiple DRNY representatives and lasted for multiple days. (Id.).

[5] In any event, the Calder Effects Test is also satisfied here. All of the alleged misconduct on the part of Woods took place in Pennsylvania, which is openly acknowledged in the DRNY Report. This is further reinforced by the Declaration of Cliff Zucker, the General Counsel for Defendant, who acknowledged that Defendant "initiated an investigation of Plaintiff's program," with Defendant's attorneys and staff conducting such investigations in Pennsylvania in October and December, 2016. (ECF 22, ¶¶ 14-16). Although Plaintiff filed a motion to strike Mr. Zucker's declaration (ECF 23), whether the Court considers the declaration, or declines to do so, is not dispositive.

[6] The Court also notes that, in light of the fact that Plaintiff submitted multiple witness declarations in its Response to the Motion to Dismiss (ECF 9), the Court provided an opportunity to Defendant to engage in jurisdictional discovery, but Defendant declined to take any jurisdictional discovery. (ECF 22).

### 1. Choice of Law Analysis

A federal court exercising diversity jurisdiction applies the conflict of law rules of the forum state. Pennsylvania's two step framework for question of choice of law requires a determination of two questions. First, the Court determines whether a real conflict exists between the respective laws. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007). The parties acknowledge—and the Court agrees—that there is a real conflict here because an assertion of qualified privilege heightens the threshold negligence standard on defamation claims regarding matters of public concern under New York law, but not under Pennsylvania law.

The second step is to determine which state "has the greater interest in the application of its law." Id. at 231. Such analysis utilizes two factors: (1) an examination of the contacts to determine the most significant relationship, and (2) an interest-based analysis of state policies with respect to the controversy. Melville v. Amer. Home Assurance Co., 584 F.2d 1306, 1311 (3d Cir. 1978). With respect to the first factor, the parties appear to agree that relevant contacts include:

(a) The place where the injury occurred,
(b) The place where the conduct causing the injury occurred,
(c) The domicile, residence, nationality, place of incorporation, and place of business of the parties, and
(d) The place where the relationship, if any, between the parties is centered.

Press v. United Airlines, Inc., No. 11-cv-2265, 2012 WL 1569786, at *8 (M.D. Pa. May 3, 2012), accord Restatement (Second) of Conflict of Laws § 145(2). The parties agree that the alleged injury occurred in Pennsylvania, that Plaintiff is domiciled in Pennsylvania, and that Defendant is domiciled in New York. The conduct causing the injury generally occurred in New York, where the DRNY Report was written, although some portion of it occurred in

Pennsylvania, since Defendant traveled there to conduct its investigations. The relationship between the parties, if any, revolves around Pennsylvania, given that Defendant initiated the interactions between the parties through its travels to Plaintiff's location to conduct its investigations.

As for the second factor in the choice of law analysis, it clearly weighs heavily in favor of applying Pennsylvania defamation law. Defendant's arguments focus largely on the alleged public policy benefits of having a negligence-based standard—versus a higher one—for assertions of qualified privilege in the context of defamation claims. However, it remains the case that Pennsylvania's standard is in fact negligence-based, with any resulting benefit inuring to the benefit of potential victims of defamatory statements. Indeed, courts applying Pennsylvania choice of law rules to defamation actions have recognized that "[d]efamation laws are undergirded by the state's interest in protecting the individual reputations of its citizens." Fitzpatrick v. Milky Way Prods., Inc., 537 F. Supp. 165, 171 (E.D. Pa. 1982). Because "[t]he state of a plaintiff's domicile is generally the place where most of his reputational contacts are found . . . '**the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name** and providing compensation for harm caused by the defamatory publication.'" Wilson v. Slatalla, 970 F. Supp. 405, 414 (E.D. Pa. 1997) ((quoting Fitzpatrick, 537 F. Supp. at 171) (emphasis added)).

In summary, Pennsylvania defamation law applies to this case.

### 2. Qualified Privilege Under Pennsylvania Law

Under Pennsylvania law, "a showing of negligence is both required for a plaintiff to prove a defamation claim and sufficient for a plaintiff to overcome the conditional privileges provided by state law." Pacitti v. Durr, 310 Fed. App'x 526, 528 (3d Cir. 2009). Therefore, the only question affecting the appropriate standard of fault for a defamation claim under

Pennsylvania law is "whether the plaintiff is a public or private figure." Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pennsylvania, 592 Pa. 66, 83 (2007). Where the plaintiff is a public figure, and the statement relates to a matter of public concern, the plaintiff must establish that the allegedly false statement was made with actual malice. This requirement is derived from the Supreme Court's First Amendment jurisprudence, discussed below.

### 3. First Amendment Requirements

The United States Supreme Court has established a constitutional privilege allowing the publication of allegedly defamatory statements concerning public officials and public figures on matters of public concern, as long as the publication is not done with "actual malice." In New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964), the Supreme Court held that a state cannot award damages to a "public official" for defamatory statements concerning his official conduct absent a showing that the statements were published with "actual malice." This standard was extended to "public figures" in Curtis Publishing Co. v. Butts, 388 U.S. 130, 162-63 (1967) (Warren, C.J., concurring), and in Gertz v. Robert Welch, 418 U.S. 323, 352 (1974) the Court indicated that parties who are not public figures for all purposes may still be limited-purpose public figures with respect to a particular controversy.

The question of whether Plaintiff is a limited-purpose public figure is a question of fact—"difficult and fact-specific"—not suitable for resolution under Rule 12(b)(6). See Schiavone Const. Co. v. Time, Inc., 619 F. Supp. 684, 702 (D.N.J. 1985); see also Marcone, 754 F.2d at 1082. As a result, courts regularly find that the determination of a litigant's status as a public or private figure should be deferred until summary judgment when a full factual record can be developed. See, e.g., Gillon v. Bernstein, No. 12-cv-04891, 2013 WL 5159625, at *5 (D.N.J. Sept. 12, 2013) ("While the Complaint notes that Gillon has appeared on at least two television programs, . . . the Court finds it appropriate to defer the public figure inquiry until after the

record has been more fully developed through discovery."); Trivedi v. Slawecki, No. 4:11-CV-02390, 2012 WL 5987410, at *3 (M.D. Pa. Nov. 28, 2012) (finding that the question of public figure status "is more appropriately resolved at the summary judgment stage on the basis of record evidence").

This Court will now make the same determination, reserving the question of whether Plaintiff is a public figure for a later time.[7] At this stage, it is sufficient for Plaintiff to allege that Defendant "acted negligently rather than maliciously." Am. Future, 592 Pa. at 84. Here, Plaintiff has clearly met such a standard, by alleging, for example, that the DRNY Report proposes 34 "immediate actions, the vast majority of which Woods had already implemented prior to" the DRNY Report, which, "[h]ad DRNY bothered to full investigate . . . it would have known of these aspects of Woods' existing program." (Compl. ¶¶ 117-118). Most of the Complaint's allegations go far beyond alleging negligence, however, stating that "DRNY used the New York residents at Woods as ammunition in its ongoing campaign to reduce the number of disabled New Yorkers cared for in residential settings." (Id. ¶ 37).

Plaintiff clearly demonstrates the required constitutional minimum of negligence for purposes of establishing its claim for defamation.

## V. Conclusion

Therefore, for all the above reasons, Defendant's Motion to Dismiss is DENIED in its entirety.

An appropriate Order follows.

O:\CIVIL 18\18-296 Woods Services v Disability Advocates\18cv296 Memo re MTD.doc

---

[7] Nonetheless, for purposes of this limited inquiry under Rule 12(b)(6), and assuming all allegations as true, Plaintiff has sufficiently alleged actual malice in its Complaint.

11